# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JIMMIE LYLES CARPETS, INC., | ) |
| Plaintiff, | ) |
| v. | ) NO. 12-CV-0773-W-FJG |
| MUNLAKE CONTRACTORS, INC., and BERKLEY REGIONAL INSURANCE COMPANY, | ) |
| Defendants. | ) |

## ORDER

Currently pending before the Court is plaintiff's Motion to Stay Proceedings and Compel Binding Arbitration (Doc. # 9).

### I. BACKGROUND

In 2009, defendant Munlake Contractors, Inc. ("Munlake") was awarded the prime contract for the construction of a campus housing project at Alcorn State University in Jefferson County, Mississippi. Plaintiff Jimmie Lyles Carpets, Inc. ("Lyles") was a subcontractor to Munlake and furnished labor and materials for installation of the flooring for the project. The subcontract entered into by the parties stated in part:

> D. This subcontract was executed and submitted in the State of Missouri, and all bids received are considered and accepted in Missouri.
>
> E. Any disputes arising under this subcontract shall, at the Contractor's discretion, be submitted for mediation or arbitration under AAA rules in Kansas City, Missouri.
>
> F. Venue for legal action shall be proper only in the courts of Jackson County,

Missouri.

Disputes arose between Lyles and Munlake which resulted in Lyles filing suit against Munlake and Berkley Regional Insurance Company for monies which it claims it is owed. The subcontract does not contain a choice of law provision. The Prime Contract states that the contract shall be governed by the law of the place where the project is located. (Article 13 of Prime Contract - Exh. F to Motion to Compel). The subcontract states "[w]here the terms of this document conflict with any other contract or document, including but not limited to the Prime Contract, any contracts from engineers, architects or other professional or purchase orders, the terms of this contract shall govern." (Subcontract, Section II - Exh. A to Motion to Compel).

On April 14, 2011, Lyles filed a Demand for Arbitration against Munlake. In order to toll the statute of limitations, Lyles filed a Complaint on April 18, 2011 in the Circuit Court of Jefferson County, Mississippi against Munlake, seeking enforcement of the arbitration provision. On May 2, 2011, Lyles filed an Amended Complaint, adding defendant Berkley, as surety. On June 6, 2011, Munlake and Berkley removed the action to the Southern District of Mississippi. On February 29, 2012, the Court in Mississippi stayed the case pending a determination of the Motion to Compel Arbitration. On June 14, 2012, the Mississippi Court issued an Order granting the Motion to Change Venue and transferring the case to the Western District of Missouri. The Court now considers the Motion to Compel Arbitration.

## II. CHOICE OF LAW

Lyles argues that Mississippi law applies to this case. Munlake does not state which law it believes applies, but does cite to Mississippi cases in its Suggestions in

2

Opposition.

> Federal courts sitting in diversity apply the choice-of-law rules of the forum state. Prudential Ins. Co. of Am. v. Kamrath, 475 F.3d 920, 924 (8th Cir. 2007). Under Missouri law, a choice-of-law clause in a contract generally is enforceable unless application of the agreed-to law is 'contrary to a fundamental policy of Missouri.' Kagan v. Master Home Prods. Ltd., 193 S.W.3d 401, 407 (Mo.Ct.App.2006).

Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009). In the instant case, because the Prime Contract states that Mississippi law applies and because the subcontract contains no other choice of law provision which conflicts with this, the Court finds that Mississippi law applies to this dispute.

### III. STANDARD

In Moore v. Green Tree Servicing, LLC, No. 1:09-CV-133-SA-JAD, 2009 WL 4017768, *1 (N.D.Miss. Nov. 19, 2009), the Court stated:

> In determining whether a party should be compelled to arbitrate, this Court employs a two-step analysis. Sherer v. Green Tree Servicing, LLC, 548 F.3d 379, 381 (5th Cir.2008). First, the Court determines if the party has agreed to arbitrate the dispute. Id. The Court then determines whether there is any federal statute or policy which renders the claims nonarbitrable. . . . When determining whether parties have agreed to arbitrate a dispute, the Court considers two issues: (1) whether there is a valid agreement to arbitrate the claims, and (2) whether the dispute in question falls within the scope of that arbitration agreement. Id. In deciding these issues, the Court applies "ordinary state-law principles that govern the formation of contracts." Graves v. BP Am. Inc., 568 F.3d 221, 222 (5th Cir.2009).

### IV. DISCUSSION

Lyles argues that it is entitled to arbitration because the subcontract contained the following phrase: "Any disputes arising under this Subcontract shall, at the Contractor's discretion, be submitted for mediation or arbitration under AAA rules in

3

Kansas City, Missouri." Lyles states that when the unconscionable phrases "*at the Contractor's discretion*" and "*in Kansas City, Missouri*" are stricken from the subcontract, there is an agreement to arbitrate. Lyles states that under Mississippi law, Munlake cannot reserve to itself, the prerogative to void the arbitration agreement or to impose its choice of locale on the parties. Lyles argues that these terms make the arbitration clause substantively unconscionable. Lyles argues that the Mississippi Supreme Court has recognized a court's ability to strike unconscionable provisions from a contract. Lyles asserts that in the instant case, the agreement to arbitrate is valid, but the provisions mentioned above, render the contract one-sided and oppressive and should be stricken from the subcontract. Lyles states that after the objectionable provisions are stricken, the clause should read: "Any dispute arising under this subcontract shall be submitted for mediation or arbitration under AAA rules." Lyles argues that the dispute between itself and Munlake is within the scope of the arbitration agreement and its motion to compel arbitration should be granted.

In opposition, Munlake argues that a party cannot be compelled to submit a dispute to arbitration unless it has contractually agreed to do so. Munlake states that it never agreed to arbitrate and compelling it to do so would be in direct conflict with the agreed upon language of the subcontract. Munlake states that the contract is not unconscionable simply because it gives the contractor discretion whether to submit the claims to arbitration. This does not deprive Lyles from pursuing a claim against Munlake in court, nor does it deprive it of any other remedy. Munlake notes that in Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock, 14 So.3d 695 (Miss.2009), the court noted, "section 4 of the FAA does not confer a right to

4

compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed in the manner provided for in [the parties'] agreement." Id. at 707 (quoting Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 474-75, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)).

In reply, Lyles argues that the Prime Contract provides for binding arbitration and because the Prime Contract has been integrated into the subcontract, binding arbitration should be available to Lyles. Lyles states that pursuant to the Prime Contract, disputes arising out of or related to the Project at Alcorn State University are subject to binding arbitration and such disputes are to be arbitrated in Mississippi. (Prime Contract § 4.9). However, the language of the subcontract also states, "When the terms of this document [the subcontract] conflict with any other contract or document, including but not limited to the Prime Contract, any contracts from engineers, architects or other professionals or purchase orders, the terms of this contract shall govern." (Subcontract Section II - F.)

The Court finds that in this case, the language of the subcontract controls. As discussed earlier, in determining whether a party should be compelled to arbitrate, the Court must first ask 1) whether there is a valid agreement to arbitrate the claims and 2) whether the dispute falls within the scope of the arbitration agreement. In the instant case, the language of the agreement clearly states that "[a]ny disputes arising under this subcontract shall, *at the Contractor's discretion*, be submitted for mediation or arbitration under AAA rules in Kansas City, Missouri." The phrase plainly shows that there was no agreement between the parties to arbitrate *all* of their disputes, rather, the

clause gives the contractor *the option* to submit a dispute to arbitration or mediation, it is by no means a requirement. The Court also does not find that this makes the arbitration clause unconscionable. In Moore v. Green Tree Servicing, LLC, 2009 WL 4017768 (N.D.Miss. 2009). The Court stated:

> To determine whether a contract is substantively unconscionable under Mississippi law, the Court must "look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties." Moulds, 14 So.3d at 699. "Substantive unconscionability is proven by oppressive contract terms such that there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach." Id. at 699-700 (internal quotations omitted).

Id. at *3.

In the instant case, there is no gross disparity between the parties. Munlake and Lyles are both sophisticated business entities, who are no doubt well versed in reviewing and negotiating contract language. The Court finds that if the parties had desired to have binding arbitration be the only means of resolving disputes, they were both fully capable of negotiating or altering the contract language to effect this change. Additionally, Lyles is not deprived of all of the benefits of the agreement or left without a remedy for Munlake's alleged breach of the contract. Lyles is permitted under the contract to seek redress against Munlake in the courts. The Court in Moore stated, "[t]he federal courts of this state have consistently held that mutuality of obligation is not required for a contract to be enforceable and that an arbitration clause is not unenforceable solely because it is one-sided." Id. at *5 (internal quotations and citations omitted). In United States ex. rel. Aduddell Roofing & Sheet Metal, Inc. v. Carothers Construction, Inc., No. 1:08CV346LG-RHW, 2000 WL 35731889 (S.D.Miss. Nov. 21,

6

Case 4:12-cv-00733-FJG   Document 28   Filed 10/02/12   Page 6 of 7

2000), a subcontractor argued that the arbitration clause was substantively unconscionable because it allowed the prime contractor to elect to have some claims heard in court in certain circumstances.  The Court disagreed, stating that it had reviewed similar arbitration clauses between commercial entities and found no unconscionability.

> First, mutuality of obligation is not required under Mississippi law for an arbitration agreement to be enforceable as long as there is consideration. . . . Additionally, the clause is reasonable due to the nature of the parties' business. Furthermore, the clause requires [the Contractor] to exercise good faith in making the determination whether a particular dispute should be brought in court.

Id. at *3, (quoting Remza Drywall Inc. v. W.G. Yates & Sons Const., No. 1:07CV106-LG-JMR, 2007 WL 2033047, *4 (S.D.Miss. July 10, 2007)).  Accordingly, for the reasons stated, the Court does not find that the parties agreed to arbitrate their disputes.  Nor does the Court find that the arbitration provision is unconscionable or that any terms of the agreement should be stricken.

## IV. CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Plaintiff's Motion to Stay Proceedings and Compel Binding Arbitration (Doc. # 9).


Date: <u>October 2, 2012</u>                       **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                         Fernando J. Gaitan, Jr.
                                                      Chief United States District Judge